People of State of Illinois ex rel. George F. Barrett, Attorney General, Plaintiff Below, Appellee, v. Annie Merner Pfeiffer Foundation, Soon K. Hahn and Jessie W. Armstrong, Defendants Below, Appellants, and Louise Yim (Formerly Louise Yim Hahn), Garfield David Merner, Carl John Merner and Harry James, Executors and Trustees Under the Will of Annie Merner Pfeiffer, Deceased, Defendants Below, Appellees.

Gen. No. 45,390.

Opinion filed November 21, 1951. Released for publication December 6, 1951.

DAILY, DINES, ROSS & O'KEEFE, of Chicago, for appellants; FRANCIS L. DAILY, ROBERT McCLORY, ROBERT F. DAILY, all of Chicago, of counsel.

IVAN A. ELLIOTT, Attorney General, of Chicago, for appellee; ROBERT J. BURDETT, of Chicago, of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is a suit for the liquidation of the affairs, and dissolution, of the defendant corporation. The chancellor appointed a receiver *pendente lite,* and subsequently a liquidating receiver. The defendants' motion to vacate the order appointing the liquidating receiver was denied. They appeal from the orders appointing the liquidating receiver, and denying the motion to vacate.

The Foundation is named for Annie Merner Pfeiffer, a resident of New York. She and her husband had many philanthropic interests, including the education of Koreans. She became acquainted with Soon K. Hahn and his wife, Louise Yim Hahn, both Koreans living in the United States. Hahn was president and principal owner of a Chicago business enterprise, the Oriental Importing Company. Mrs. Pfeiffer and the Hahns agreed to organize the Foundation and to become charter members. On April 29, 1940 the Secretary of State certified to the incorporation of the Foundation as a Not For Pecuniary Profit Corporation.

The charter stated the purpose of the corporation to be the support by endowment and annual gifts to Korean educational institutions, and the promotion of artistic and scientific relations between the United States and Korea.

Annie Pfeiffer and the Hahns were the first directors and officers. On May 9, 1940 Annie Pfeiffer agreed in writing to bequeath $300,000 in her will to the Foundation in consideration of the issuance of a life membership and other good and valuable considerations. Thereafter, she paid the Foundation $10,000,

and at the same time as treasurer drew a check for the same amount on the Foundation payable to Louise Yim for the Central Normal College of Seoul, Korea. Subsequently Annie Pfeiffer wrote the Foundation that she had no intention of making the bequest. She stated she did not regard the agreement as binding on her either morally or legally. On January 8, 1946 Annie Pfeiffer died and her will named Garfield D. Merner, Carl John Merner and Harry James of New York as executors and trustees. The will named five "boards and divisions of the Methodist-Episcopal Church" residuary legatees. The executors and trustees paid the residue of the estate to the residuary legatees without deducting $300,000 for the Foundation.

The foregoing facts are admitted expressly or implicitly in the pleadings or by failure to plead.

On July 29, 1949 the chancellor found doubt as to the legality of the corporation and appointed a receiver *pendente lite*. The receiver's inventory listed as assets $680.79 cash, corporate records and a financial statement. In his account he stated that the principal asset was the claim for the $300,000.

On October 25, 1950 the chancellor, on plaintiff's motion, appointed over defendants' objection a liquidating receiver. The basis of appointment were findings that a provision of the charter was unlawful and that the Foundation exceeded and abused its authority. On November 10, 1950 defendants' motion to vacate was denied. They answered the receiver's petition. This superseded a previous motion to strike but the defendants reserved the right to question the court's authority in appointing the liquidating receiver.

The questions are whether the liquidating receiver was properly appointed and whether the order of appointment should not have been vacated. These in-

58

volve the question whether the appointment was a reasonable exercise of the court's discretion.

The chancellor found that the Foundation charter violated the General Not For Profit Corporation Act. The allegations in the plaintiff's complaint and statements in his motions and affidavits on which the finding was based are that the charter provision authorizes payment of dividends or distribution of the property of the corporation to members when all debts are paid and upon a vote of a majority of the members for final dissolution; that this implies a power to distribute to individuals other than charities; and that this violated section 55 of the Act.

The Foundation was organized under the Corporations Not For Pecuniary Profit Act of 1872, as amended. Ill. Rev. Stat. 1937, chap. 32, pars. 158–163. At the time this suit was filed, that Act had been repealed by the General Not For Profit Corporation Act of 1943. Ill. Rev. Stat. 1949, chap. 32, pars. 163a–163a100.

Paragraph 163a54 (section 55 [Jones Ill. Stats. Ann. 32.256 (55)]) of the present Act provides for the distribution of assets in an involuntary liquidation. They are to be applied, as far as is pertinent here; secondly, to the return of assets conditioned upon the carrying out of the corporate purpose; fourthly, in accordance with by-laws determining "distributive rights of members."

██ Plaintiff argues that under the Foundation by-laws, contributions and dues were to be used for educational purposes stated in the charter: that the law required that these contributions and dues were to be returned to the donors: that the charter gave the power of distribution to members on dissolution: that the Secretary of State was not aware of the by-laws and contributions when he issued the certificate: and

that it is obvious that the franchise was a fraud upon the State. Plaintiff did not allege, nor did the chancellor make a finding of fraud. The language of the first sentence of paragraph 162 of the prior Act is the same as the language in the charter which it is claimed violates the General Not For Profit Corporation Act. The distribution provisions of the present Act include the distribution provisions of the prior Act (paragraph 162) and the provisions of paragraph 201 of chapter 32 [Jones Ill. Stats. Ann. 32.300] in force when the Foundation was organized. The legislature in the prior and present Acts contemplated a distribution as was authorized in the charter provision. There is nothing alleged from which it can be inferred that defendants were to distribute assets out of the statutory order. We see no basis upon which a finding could be made that the charter of the Foundation in this respect violated the law.

The chancellor found that the Foundation continued to exceed and abuse its authority by permitting the Wisconsin real estate to be used as an amusement place and market although it was not authorized by its charter or Illinois or Wisconsin Secretaries of State to do business in Wisconsin. These findings were based on allegations that Hahn deeded a tract of Wisconsin real estate to the Foundation in October, 1941 and that he later moved the office and factory of the Oriental Importing Company to that property, conducting the business of that company there since sometime in 1944; and that the Foundation permitted the property "conveyed" to it to be used as a market for rugs and oriental objects and as an amusement place. Defendant denied that the Wisconsin property, the "Korean Village," was operated as an amusement place, and averred that the conveyance by Hahn to the Foundation was made pursuant to an oral agreement with Mrs. Pfeiffer to finance the undertaking for

60

the benefit of Korean students in the United States, and that Hahn personally undertook its financing on Mrs. Pfeiffer's failure to carry out the agreement, no funds of the Foundation being used in its operations; that the Foundation had only bare legal title to the property and never itself carried on the business at the "Korean Village" in any way; and that the property was reconveyed to Hahn in September, 1947 and at present the Foundation has no interest in the property. No reply was filed to these affirmative matters.

 Courts of equity are given power by Illinois statute to liquidate the affairs of a not for profit corporation when, among other things, the Attorney General sues to dissolve and it appears that liquidation should precede dissolution, and are empowered to appoint liquidating receivers and take such other action as may be requisite to preserve corporate assets "until a full hearing can be had." Ill. Rev. Stat. 1949, chap. 32, pars. 163a53, 163a54 [Jones Ill. Stats. Ann. 32.256 (54), 32.256 (55)]. We presume that the chancellor in accordance with paragraph 163a53 decided that it had been made to appear that liquidation of the Foundation affairs should precede the entry of a decree of dissolution. The decision should be based on the reasonable probability that dissolution will be decreed [4 Pomeroy, Equity Jurisprudence § 1331 (5th ed.)], and on circumstances which the chancellor thinks require the appointment before dissolution. Circumstances which indicate the need of an earlier appointment do not justify the appointment unless there are grounds for dissolution alleged from which the chancellor can reasonably anticipate a decree of dissolution.

There was no preliminary hearing of the issues made to determine whether it was probable that plaintiff could prove the allegations of which defendant made issue. There is nothing in the record which would warrant the conclusion that dissolution would probably

be decreed because of continued excess and abuse of authority. We think under these circumstances that there was no basis for the finding in that respect.

██ There was a côlloquy between the chancellor and the attorneys after the appointment and before the chancellor ruled on defendants' motion. This colloquy shows the chancellor's desire to effectuate the settlement of the $300,000 claim in the interest of the charitable purposes of the Foundation. On the other hand, it shows that defendants were not objecting because a third person instead of the Foundation was to be paid the money, but rather insisting that the Foundation should be left intact. The colloquy indicates concern that the settlement offered would be lost unless the liquidating receiver was appointed. If the intention of this proceeding was to ''preserve corporate assets,'' the end was not accomplished. There is no finding in the order that the receiver was appointed to preserve the claim or to insure its collection. Moreover, such a finding would not justify appointing a liquidating receiver in the absence of reasonable grounds for anticipating dissolution.

██ In the affidavit filed with plaintiff's motion for appointment of liquidating receiver it is stated that the settlement of the claim is predicated on the appoint of a liquidating receiver. The appointment of the liquidating receiver was to supersede the appointment of the receiver *pendente lite* and the powers given in the order of appointment are consistent with liquidation. We think the only reasonable conclusion that can be drawn from the entire record is that the plaintiff and the chancellor intended that the condition precedent to the settlement should be fulfilled, and that the purpose was to liquidate the Foundation.

██ We conclude that the record before the chancellor did not justify his anticipation that dissolution of the Foundation would be decreed on either or both of

the grounds alleged. There was therefore no basis for appointing a liquidating receiver, and the appointment was an abuse of discretion under the powers granted by the Act. Ill. Rev. Stat. 1949, chap. 32, par. 163a53.

We need consider no other points raised. For the reasons given, the orders appealed from are reversed.

*Orders reversed.*

LEWE and FEINBERG, JJ., concur.